[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Total Quality Logistics, L.L.C. v. JK & R Express, L.L.C.*, Slip Opinion No. 2020-Ohio-6816.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6816

TOTAL QUALITY LOGISTICS, L.L.C., APPELLANT, *v*. JK & R EXPRESS, L.L.C., APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Total Quality Logistics, L.L.C. v. JK & R Express, L.L.C.*, Slip Opinion No. 2020-Ohio-6816.]

*Contracts—Indemnification—The requirements set out in* Globe Indemn. Co. v. Schmitt *do not apply when the parties express a clear intent to abrogate those common-law requirements in their contract—The court of appeals applied the* Globe Indemn. Co. *requirements without considering whether the parties intended to abrogate those requirements—Judgment reversed and cause remanded to the trial court.*

(No. 2019-0267—Submitted April 8, 2020—Decided December 22, 2020.)

APPEAL from the Court of Appeals for Clermont County,
No. CA2018-05-034, 2019-Ohio-20.

_____

**FRENCH, J.**

{¶ 1} We accepted the discretionary appeal of appellant, Total Quality Logistics, L.L.C. ("TQL"), to consider whether the common-law requirements set out in *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944), for determining whether an indemnitee may recover against an indemnitor when the indemnitee has settled a claim without the indemnitor's involvement, apply when the rights of the parties are governed by a contract that includes an indemnification provision. We determine, as we do today in *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, ___ Ohio St.3d ___, 2020-Ohio-6821, ___ N.E.3d ___, that the *Globe Indemn. Co.* requirements do not apply when the parties express a clear intent to abrogate those common-law requirements in their contract. But because the Twelfth District Court of Appeals applied the *Globe Indemn. Co.* requirements without considering whether the parties' intended to abrogate those requirements, we reverse its judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

## I. Background

### A. TQL and JK & R enter into a broker-carrier agreement for JK & R to transport TQL's customers' products

{¶ 2} TQL is a freight broker that arranges for the transportation of its customers' freight and cargo from one location to another. Appellee, JK & R Express, L.L.C. ("JK & R"), is a motor carrier that transports freight and cargo. TQL entered into a broker-carrier agreement with JK & R for JK & R to provide motor-carrier-transportation services to TQL's customers. The broker-carrier agreement included the following provisions:

> 8. ***CARGO LIABILITY AND CLAIMS***. * * * [JK & R] is fully responsible and liable for the freight once in possession of it, and the trailer(s) is loaded, even partially, regardless of whether a bill of lading has been issued, signed, and/or delivered to [JK & R].

[JK & R's] responsibility/liability shall continue until proper and timely delivery of the shipment to the consignee and the consignee signs the bill of lading or delivery receipt evidencing successful delivery.

* * *

10. ***INDEMNIFICATION***. [JK & R] agrees to defend, indemnify, and hold [TQL] and [customers] harmless from and against any and all claims or liability (including, without limitation, Workers' Compensation claims), arising out of or in any way related to [JK & R's] negligence, willful misconduct, acts, omissions, or performance or failure to perform under this Agreement, including, without limitation, claims or liability for cargo loss and damage, theft, delay, damage to property, and bodily injury and/or death. Except for Workers' Compensation claims, [JK & R] shall not be required to indemnify any party (including [TQL]) for claims or liability that are directly and solely caused by the negligence or willful misconduct of that party.

(Boldface, capitalization, and underlining sic.)

{¶ 3} After the parties had entered into the broker-carrier agreement, TQL arranged for JK & R to transport apples for TQL's customer, Contél Fresh, from Washington to Missouri and New Jersey. JK & R successfully picked up the apples in Washington, but while it was en route to Missouri, JK & R's trailer carrying the apples caught fire and the apples were destroyed, which constituted a complete loss of the freight.

*B. TQ*

*C. L pays Contél Fresh for the freight loss by offsetting the amount of the loss against open invoices*

**{¶ 4}** After the loss of the apples, Contél Fresh submitted an invoice to TQL for $86,240. TQL offset $86,240 of its open invoices to Contél Fresh to pay Contél Fresh for the loss.

**{¶ 5}** In addition to its loss because of the destruction of the apples, TQL experienced the loss of its freight-brokerage services in the amount of $6,500, because JK & R did not successfully deliver the apples. JK & R provided partial payment to TQL in the amount of $9,074, because TQL applied JK & R's open invoices to the amount owed to TQL. The total amount owed by JK & R after that payment, according to TQL, was $83,666.

*D. TQL sues JK & R for the balance owed to it under the broker-carrier agreement*

**{¶ 6}** TQL filed a complaint against JK & R for breach of contract or, in the alternative, unjust enrichment and promissory estoppel to recover the amount owed to it under the broker-carrier agreement. The parties filed competing motions for summary judgment.

**{¶ 7}** TQL argued that it was entitled to the balance owed under the broker-carrier agreement because JK & R had breached the contract. JK & R argued that TQL was not contractually compelled to pay Contél Fresh, nor was it compelled to pay Contél Fresh by a judgment of a court. JK & R maintains that because TQL had no obligation to pay for the losses relating to the apples, TQL voluntarily settled the claim merely as a business consideration and thus has failed to satisfy the second requirement under *Globe Indemn. Co.*, 142 Ohio St. 595, 53 N.E.2d 790. JK & R argued that it was therefore not required to pay TQL for the loss of the cargo. TQL argued in response that *Globe Indemn. Co.* does not apply because there is an express indemnification clause in the contract entered into by TQL and JK & R governing the loss of cargo.

{¶ 8} The trial court granted summary judgment to JK & R on TQL's cargo-loss claim. The court determined that in order for TQL to prevail on the cargo-loss claim, TQL must satisfy the principles established for obtaining indemnification outlined in *Globe Indemn. Co.* The court determined that TQL could not show that it was legally liable for the loss of the cargo and that TQL did not satisfy the requirements to be entitled to indemnification under our decision in *Globe Indemn. Co.* after it had voluntarily settled the claim with Contél Fresh. The court concluded that TQL's right to indemnification from JK & R "has not been triggered."

{¶ 9} But, the trial granted summary judgment to TQL on its freight-brokerage-services claim, determining that JK & R was fully liable for the losses associated with the freight once the freight had been in its possession under the terms of the broker-carrier agreement. The court determined that TQL was entitled to $600 on its freight-brokerage-services claim.

*E. TQL appeals to the Twelfth District Court of Appeals*

{¶ 10} TQL appealed the trial court's judgment to the Twelfth District Court of Appeals. TQL argued that our decision in *Globe Indemn. Co.*, 142 Ohio St. 595, 53 N.E.2d 790, and its progeny do not apply to the facts of this case because of the express-contractual provision regarding indemnification contained in the broker-carrier agreement.

{¶ 11} The Twelfth District, relying upon the decision of the Seventh District Court of Appeals in *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, 7th Dist. Mahoning No. 17 MA0018, 2018-Ohio-4015, rejected that argument. 2019-Ohio-20, ¶ 16. The court held that our decision in *Globe Indemn. Co.* applies to cases in which there was a written indemnification provision in the contract between the parties. *Id.* The court concluded that in order for TQL to prevail on its contractual-indemnity claim, TQL must be able to satisfy its burden under *Globe Indemn. Co.*, which it did not do. *Id.* at ¶ 16-19.

**{¶ 12}** The court of appeals applied our decision in *Globe Indemn. Co.*, determining that TQL could be entitled to indemnification only if (1) it had given proper and timely notice to JK & R of the claim by Contél Fresh, (2) it was legally liable to respond to the settled claim, and (3) the settlement was fair and reasonable. *Id.* at ¶ 15. Because TQL had failed to establish the second requirement in *Globe Indemn. Co.*—that is, it failed to show that TQL was legally liable to respond to Contél Fresh's claim—the court of appeals concluded that TQL was not entitled to indemnification. *Id.* at ¶ 17, 19-21. The court of appeals thus affirmed the judgment of the trial court. *Id.* at ¶ 29.

**{¶ 13}** TQL appealed to this court, and we accepted jurisdiction to consider whether "[a] valid written indemnification agreement must be enforced as written in accordance with the intent of the parties and cannot be supplanted by the three *Globe* factors that are applicable only in the context of an equitable remedy." *See* 155 Ohio St.3d 1463, 2019-Ohio-1817, 122 N.E.3d 1285.

## II. Analysis

**{¶ 14}** We address the issue in this case today in *Wildcat Drilling, L.L.C.*, ___ Ohio St.3d ___, 2020-Ohio-6821, ___ N.E.3d ___. We determine in *Wildcat Drilling, L.L.C.*, that the requirements set out in *Globe Indemn. Co.*, 142 Ohio St. 595, 53 N.E.2d 790, for determining whether an indemnitee may recover against an indemnitor when the indemnitee has settled a claim without the indemnitor's involvement, do not apply when the parties express a clear intent to abrogate those common-law requirements in their contract. *Wildcat Drilling, L.L.C.* at ¶ 1.

**{¶ 15}** As we note in *Wildcat Drilling, L.L.C.*, *Globe Indemn. Co.* outlines three common-law requirements for indemnification. In order to be entitled to indemnification after a voluntary settlement, the indemnitee must prove that (1) proper and timely notice was provided to the indemnitor, (2) the indemnitee was legally liable to respond, and (3) the settlement was fair and reasonable. *Globe Indemn. Co.* at 604, citing *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15,

21, 5 A.2d 153 (1939); *see also New York Cent. R. Co. v. Linamen*, 171 Ohio St. 87, 88, 167 N.E.2d 778 (1960) (plaintiff did not establish a right to recover because plaintiff did not allege or prove that notice was provided to the defendant prior to settlement or prove that the settlement was fair and reasonable).

{¶ 16} In Ohio, parties "have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced." *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 36, 514 N.E.2d 702 (1987); *see also Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 8; *Blount v. Smith*, 12 Ohio St.2d 41, 47, 231 N.E.2d 301 (1967). That includes the right to include contractual terms that abrogate the common law. *Paul Cheatham I.R.A. v. Huntington Natl. Bank*, 157 Ohio St.3d 358, 2019-Ohio-3342, 137 N.E.3d 45, ¶ 30. "[B]ut the intent to do so must be clearly indicated." *Id.* That intent must be reflected in the language the parties used in their contract. *Kelly v. Med. Life. Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987) ("The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement"). This principle applies to indemnification agreements. If the language used in the parties' contract evinces a clear intent to abrogate the common-law *Globe Indemn. Co.* requirements, the contract should be applied as written and the indemnitor is obligated to indemnify the indemnitee under the terms of the agreement.

{¶ 17} The contract at issue here does not expressly abrogate the *Globe Indemn. Co.* requirements. As we recognize in *Wildcat Drilling, L.L.C.*, though, no talismanic or magical language is required in order for parties to abrogate the common law through contractual terms. We must look to the language that the parties used in their contract to determine their intent regarding an indemnification provision. For example, in *Worth v. Huntington Bancshares, Inc.*, 43 Ohio St.3d 192, 198-199, 540 N.E.2d 249 (1989), this court held that an indemnitee was entitled to recover his attorney fees for his unsuccessful attempt to enforce an

employment contract, because the attorney-fee indemnification provision in the contract did not condition the recovery of such fees on the indemnitee's success. The contractual language evincing the parties' intent was: "the Company irrevocably authorizes Employee from time to time to retain counsel of his choice at the expense of the Company * * * to represent Employee in connection with the initiation or defense of any litigation or other legal action * * *." (Ellipses sic.) *Id.* at 199.

{¶ 18} In *Glaspell v. Ohio Edison Co.*, 29 Ohio St.3d 44, 46-47, 505 N.E.2d 264 (1987), we construed the parties' indemnification agreement to abrogate the public-policy-based rule against allowing an indemnitee to recover for its own negligence. The contractual language in that case reflected a clear intent by the parties to permit indemnification for the indemnitee's own negligence, providing that the indemnitor was required to indemnify the indemnitee broadly for "any loss * * * which * * * [the indemnitee] may at any time or times hereafter bear, sustain, suffer, be at or be put unto for, or by reason of, or on account of (i) the installation, maintenance or use of the said equipment on or in * * * [the indemnitee's] facilities." (Ellipses sic.) *Id.* at 48. We determined that the contract was not required to expressly refer to the indemnitee's own negligence. *Id.* at 47-48.

{¶ 19} Applying the requirements set out in *Globe Indemn. Co.*, the trial court here granted JK & R's summary-judgment motion on TQL's claims against it. But the trial court did not consider whether the parties abrogated *Globe Indemn. Co.*'s second requirement—that the indemnitee is legally liable to respond to the injured party, 142 Ohio St. at 604, 53 N.E.2d 790. Because of that failure, it also had no occasion to consider whether TQL otherwise satisfied the contract's requirements for obtaining indemnification when TQL responded to its customer's request for reimbursement. The Twelfth District made the same mistakes. Because the analysis in this case must begin with a review of the parties' contract to ascertain whether they intended to require JK & R to indemnify TQL for voluntary

8

settlements, we reverse the Twelfth District's judgment and remand the cause to the trial court for it to consider whether the parties intended to abrogate the common-law requirements for indemnification and conduct further proceedings consistent with this opinion.

### III. Conclusion

{¶ 20} We determine, as we do in *Wildcat Drilling, L.L.C.*, ___ Ohio St.3d ___, 2020-Ohio-6821, ___ N.E.3d ___, that the *Globe Indemn. Co.* requirements do not apply when the parties express a clear intent to abrogate those common-law requirements in their contract. Because the Twelfth District of Appeals concluded otherwise, we reverse its judgment. We remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and STEWART, J., concur.

KENNEDY, J., concurs in judgment only, with an opinion.

FISCHER, J., concurs in judgment only in part and dissents in part, with an opinion joined by DEWINE, J.

DONNELLY, J., dissents, with an opinion.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 21} Because this court's tort-liability case, *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944), does not control the disposition of this contract case, I concur in the court's judgment reversing the judgment of the Twelfth District Court of Appeals.

{¶ 22} Our decision in *Globe Indemn. Co.* involved the right to indemnification between joint tortfeasors. In that case, John Shillito Company ("Shillito") contracted with Alois Schmitt to clean beneath the iron grates in the sidewalk adjacent to Shillito's department store. *Id.* at 595-596. While cleaning,

Schmitt removed an iron grate from the sidewalk, leaving the opening "unprotected and unguarded," and a pedestrian fell through the opening, suffering serious injury. *Id*. at 596. Shillito's insurer, Globe Indemnity Company, gave Schmitt notice of its intent to settle the matter, but Schmitt did not respond. *Id*. at 596-597. Globe Indemnity entered a settlement with the pedestrian and, on the basis that it had become subrogated to any right of Shillito's, sought indemnification from Schmitt. *Id*. at 597.

{¶ 23} This court noted the rule that joint tortfeasors may not seek indemnification or contribution from each other, but it explained that this rule applies when the joint tortfeasors had been actively negligent. *Id*. at 599-600. We determined that Schmitt had been actively negligent and was primarily liable, while Shillito had been passively negligent and was secondarily liable as the landowner. *Id*. at 603. This court concluded that a right to indemnification existed:

> While, then, the occupier of premises, who maintains a covered aperture in the sidewalk adjacent to his property, and another, who removes the cover and thereafter leaves the opening unprotected and unguarded, are equally liable to a pedestrian, who without fault steps into the opening and is injured, yet, as between the two first designated, the former is entitled to rely on the latter to act in a careful and prudent manner, and in the event the former pays damages to the injured person has the right to indemnity.

*Id.* at 603.

{¶ 24} However, this court did not stop there but also offered "a concluding observation," stating that "the fact of voluntary payment does not negative the right to indemnity. However, the one seeking indemnity, after making voluntary settlement, must prove that he has given proper and timely notice to the one from

10

whom it is sought, that he was legally liable to respond and that the settlement effected was fair and reasonable." *Globe Indemn. Co.*, 142 Ohio St. at 604, 53 N.E.2d 790.

{¶ 25} As I stated in *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, ___ Ohio St.3d ___, 2020-Ohio-6821, ___ N.E.3d ___ (Kennedy, J., concurring in judgment only in part and dissenting in part), this concluding statement is dicta. The requirements for preserving a right to indemnification were not at issue, and the only question was whether indemnification was proper in the first place. Moreover, *Globe Indemn. Co.* is distinguishable from this case on its facts, because it concerned joint tortfeasors while the case before us involves parties to an express indemnification clause in a contract. *Globe Indemn. Co.* therefore does not control our decision today. And because the parties do not present some other basis in contract law requiring us to determine that both advance notice of a settlement and that the settlement was reasonable are prerequisites to recovery under an express indemnification clause, we need not decide that question on our own initiative in the first instance.

{¶ 26} I therefore concur in the court's judgment to reverse the court of appeals' judgment and to remand the cause to the trial court to resolve appellant Total Quality Logistics, L.L.C.'s claim based on the broker-carrier agreement.

———————————

**FISCHER, J., concurring in judgment only in part and dissenting in part.**

{¶ 27} It has been a longstanding principle of Ohio law that parties have a fundamental right to contract freely with the expectation that the terms of their contract will be enforced. But today, though the lead opinion recites that fact, it determines, as it does today in *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas, L.L.C.*, ___ Ohio St.3d ___, 2020-Ohio-6821, ___ N.E.3d ___, that the common law may supplant the terms in a negotiated contract entered into between sophisticated parties when the contract does not *explicitly* derogate from the

common law. For the reasons set forth in my dissenting opinion in *Wildcat Drilling, L.L.C.*, and because I believe that parties who have entered into a contract with an express indemnification provision and clearly indicated that they wanted to be governed by the negotiated terms of their contract and not the common-law requirements set forth in *Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944), I must respectfully dissent from the lead opinion, which determines otherwise.

{¶ 28} I would remand the matter to the trial court to resolve the claim under the terms of the broker-carrier agreement. Therefore, I concur in the court's judgment only in part and dissent in part.

DEWINE, J., concurs in the foregoing opinion.

_____

**DONNELLY, J., dissenting.**

{¶ 29} The lead opinion relies on and reaches the same conclusion it reaches today in *Wildcat Drilling, L.L.C. v. Discovery Oil & Gas., L.L.C.*, ___ Ohio St.3d ___, 2020-Ohio-6821, ___ N.E.3d ___. As I explain in my dissenting opinion in that case, I believe "that the imminently practical and reasonable requirements for indemnification set forth in *Globe Indemn. Co.* [*v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790 (1944),] should apply whether or not there is an indemnification clause in a contract." *Wildcat Drilling, L.L.C.* at ¶ 44 (Donnelly, J., dissenting). I dissent.

_____

Bricker & Eckler, L.L.P, and Jeffrey P. McSherry, for appellant.

Roetzel & Andress, L.P.A., and Chad M. Sizemore, for appellee.

_____